BRETT L. TOLMAN
United States Attorney
District of Utah

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
ROBERT D. BROOK (pro hac vice)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-2738
Attorneys for Plaintiff United States of America

CHRISTIAN C. STEPHENS (USB No. 9068)
Assistant Attorney General
MARK L. SHURTLEFF (USB No. 4666)
Utah Attorney General
160 East 300 South, 5th Floor
Salt Lake City, Utah 84114-0873
Telephone: 801-536-4137
Facsimile: 801-536-4099
Attorneys for Plaintiff-Intervenor State of Utah

FILED
U.S. DISTRICT COURT

2008 APR 21 P 2: 20

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| and ) | Civil Action No. |
| ) | |
| STATE OF UTAH, ) | COMPLAINT |
| ) | |
| Plaintiffs, ) | |
| ) | Case: 1:08cv00041 |
| ) | Assigned To : Stewart, Ted |
| v. ) | Assign. Date : 4/21/2008 |
| ) | Description: USA et al v. Holly |
| HOLLY REFINING & MARKETING ) | Refining and Marketing Company |
| COMPANY - WOODS CROSS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Utah, by and through the Utah Department of Environmental Quality, and through Christian C. Stephens, Assistant Attorney General allege the following:

## NATURE OF ACTION

1. This is a civil action brought by the United States against Holly Refining & Marketing Company - Woods Cross ("Holly"), under Section 113(b) of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7413(b); Section 103(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9603(a); and Section 304 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004, and by the State of Utah under Title 19, Chapters 1 and 2 of the Utah Code for alleged environmental violations at Holly's petroleum refinery located in Woods Cross, Utah (the "Holly Refinery").

2. Upon information and belief, the Refinery has been and is in violation of the following environmental statutes and regulations applicable to the petroleum refining industry:

(a) the CAA, 42 U.S.C. § 7401 *et seq.*, specifically Prevention of Significant Deterioration ("PSD"), Part C of Subchapter I of the Act, 42 U.S.C. § 7475, and the regulations promulgated thereunder at 40 C.F.R. § 52.21 (the "PSD Rules"), and the regulations promulgated at 40 C.F.R. § 51.165, Part 51, Appendix 5, and § 52.24, and the regulations promulgated under Utah's SIP at Utah Administrative Code (UAC) R307-401 and R307-405 ("PSD/NSR Regulations"); New Source Performance Standards ("NSPS"), 40 C.F.R. Part 60, Subpart A and J, Section 111 of the Act, 42 U.S.C. § 7411 ("Refinery NSPS Regulations"); Leak Detection and

Repair ("LDAR"), 40 C.F.R. Parts 60 Subparts VV and GGG, Part 61 Subparts J and V, and Part 63 Subpart F, H, and CC, Section 111 and 112 of the Act, 42 U.S.C. § 7411 ("LDAR Regulations"); National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene, Section 112 of the Act, 40 C.F.R. Part 61 Subpart FF ("Benzene Waste NESHAP Regulations"); and the Utah State Implementation Plan ("SIP") which incorporate and/or implement the above-listed federal regulations;

(b) Section 103(a) of CERCLA, 42 U.S.C. § 9603(a); and the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004(a).

3. The United States and the State of Utah seeks an injunction ordering Holly to comply with the above statutes and the laws and regulations promulgated thereunder, and civil penalties for defendant's past and ongoing violations.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367; Sections 113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(a); Sections 109(c) and 113(b) of CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3).

5. Venue is proper in the District of Utah pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Sections 109(c) and 113(b) of the CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), because the defendant resides in this judicial district and the violations alleged occurred in this district.

## AUTHORITY AND NOTICE TO STATES

6. Authority to bring this action is vested in the United States Department of Justice pursuant to Sections 113(b) and 305 of the CAA, 42 U.S.C. §§ 7413(b) and 7605, and pursuant to 28 U.S.C. §§ 516 and 519, and in the State of Utah pursuant to Utah Code Annotated § 19-1-204(2).

7. Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), notice of the violations of the Utah SIP that are alleged in this complaint have been given to the State of Utah, and Holly at least 30 days prior to the filing of this complaint.

8. Pursuant to Section 113(b) of the CAA, 42. U.S.C. § 7413(b), notice of the commencement of this action has been given to the appropriate state air pollution control agency in the State of Utah.

## DEFENDANT

9. Holly Refining and Marketing Company – Woods Cross ("Holly") is a Delaware corporation doing business in Utah. Holly is a wholly-owned subsidiary of the Holly Corporation, a Delaware corporation with principal corporate offices located in Dallas, Texas. Holly is engaged in the petroleum business, and owns and operates a refinery located in Woods Cross, Utah. Allegations set forth in this Complaint that reference Holly relate to the Holly Refining and Marketing Company – Woods Cross.

10. For the purposes of Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Holly is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), in the Utah Environmental Quality Code, Utah Code Annotated § 19-1-103(4), and applicable federal and state regulations promulgated pursuant to these

statutes. Holly is the "owner or operator" of the Holly Refinery within the meaning of Section

304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b), or 329(7) of EPCRA, 42 U.S.C.

§ 11049(7).

## STATUTORY AND REGULATORY BACKGROUND

## CLEAN AIR ACT REQUIREMENTS

11. The Clean Air Act established a regulatory scheme designed to protect and enhance

the quality of the nation's air so as to promote the public health and welfare and the productive

capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

12. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to

promulgate regulations establishing primary and secondary national ambient air quality standards

("NAAQS" or "ambient air quality standards") for certain criteria air pollutants. The primary

NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be

adequate to protect the public welfare, from any known or anticipated adverse effects associated

with the presence of the air pollutant in the ambient air. The Administrator has promulgated

NAAQS for the criteria pollutants.

13. Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to

EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

14. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to

designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant, or where the air quality cannot be classified due to

insufficient data. These designations have been approved by EPA and are located at 40 C.F.R.

Part 81. An area that meets the NAAQS for a particular pollutant is classified as an "attainment"

area; one that does not is classified as a "non-attainment" area. Utah has a SIP that has been approved by EPA that accomplishes these goals and identifies attainment and no-attainment areas within the state.

## Prevention of Significant Deterioration/New Source Review

15. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, as implemented by the Utah SIP and at R307-405, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. These provisions are referred to herein as the "PSD program."

16. Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued. Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting facility" as a source with the potential to emit 250 tons per year (tpy) or more of any air pollutant. Utah's PSD regulations contain parallel requirements.

17. As set forth at 40 C.F.R. § 52.21(k), and the Utah PSD regulations, the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that construction of the facility will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount.

-6-

18. As set forth at 40 C.F.R. § 52.21(i), and the Utah PSD regulations, any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential of a source to emit any of the following criteria pollutants, at a rate of emissions that would equal or exceed any of the following: for ozone, 40 tons per year of volatile organic compounds (VOCs); for carbon monoxide (CO), 100 tons per year; for nitrogen oxides (NO$_x$), 40 tons per year; for sulfur dioxide (SO$_2$), 100 tons per year, (hereinafter "criteria pollutants").

19. As set forth at 40 C.F.R. § 52.21(j), and the Utah PSD regulations, a new major stationary source or a major modification in an attainment area shall install and operate best available control technology ("BACT") for each pollutant subject to regulation under the Act that it would have the potential to emit in significant quantities.

20. Section 161 of the Act, 42 U.S.C. § 7471, requires SIPs to contain emission limitations and such other measures as may be necessary, as determined under the regulations promulgated pursuant to these provisions, to prevent significant deterioration of air quality in attainment areas.

21. A state may comply with Section 161 of the Act either by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent

as those set forth at 40 C.F.R. § 51.166. On September 19, 1975, the State of Utah received delegation to implement and enforce federal PSD regulations. EPA approved Utah's SIP containing its PSD program on November 17, 1981. Utah's PSD rules are codified in the Utah Air Rules (UAR), Utah Code Annotated R307-405.

22. Pursuant to PSD regulations, any owner or operator who commences construction or modification of a major source without applying for and receiving approval for such construction or modification is subject to an enforcement action. 40 C.F.R. § 51.166.

23. Pursuant to Section 113(b)(1) of the CAA, 42 U.S.C. § 7413(b)(1), the violation of any requirement or provision of an applicable implementation plan is a violation of the CAA.

24. Whenever any person has violated, or is in violation of, any requirement or prohibition of the Utah SIP, Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes commencement of a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

25. Pursuant to Section 304(a)(3) of the CAA, 42 U.S.C. § 7604(a)(3), Utah is authorized to commence a civil action against any person who is alleged to have violated Parts C or D of Title I of the CAA.

### Flaring and New Source Performance Standards

26. Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the

Administrator of EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant. The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

27. Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of the EPA to promulgate regulations establishing federal standards of performance for new source of air pollutants within each of these categories. "New Sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(b).

28. Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), EPA has identified petroleum refineries as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

29. Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA has promulgated New Source performance Standards ("NSPS") for various industrial categories, including petroleum refineries. NSPS requirements for petroleum refineries are codified in 40 C.F.R. Part 60, Subpart J, §§ 60.100-60.109. The State of Utah has obtained delegation of authority from EPA to administer and enforce the NSPS for petroleum refineries within the State, and the requirements are incorporated by reference into the Utah Administrative Code at R307-210-1.

30. The provisions of 40 C.F.R. Part 60 Subpart J apply to specified "affected facilities," including, *inter alia*, fuel gas combustion devices that commenced construction or

modification after June 11, 1973. 40 C.F.R. § 60.100(a),(b).

31. 40 C.F.R. § 60.104(a)(1) prohibits the burning in any fuel gas combustion device of any fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10. The combustion in a flare of process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or other emergency malfunctions is exempt from the emission limit of 40 C.F.R. § 60.104(a)(1).

32. Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19, that apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60.

33. 40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

34. Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the operation of any new source in violation of an NSPS applicable to such source. Thus, a violation of an NSPS is a violation of Section 111(e) of the CAA.

35. Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard, Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes commencement of a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or

after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

36. Pursuant to Section 304(a)(1) of the CAA, 42. U.S.C. § 7604(a)(1), Utah is authorized to commence a civil action against any person who is alleged to have violated any emission standard or limitation under the CAA.

## Leak Detection and Repair

37. Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated New Source Performance Standards for Equipment Leaks of VOCs in Petroleum Refineries at 40 C.F.R. Part 60, Subpart GGG. Subpart GGG, in turn, incorporated many of the NSPS standards at 40 C.F.R. Part 60, Subpart VV. Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated emission standards for hazardous air pollutants ("National Emission Standards for Hazardous Air Pollutants" or "NESHAPs") at 40 C.F.R. Part 61, and NESHAPs for source categories at 40 C.F.R. Part 63. The relevant NESHAPs are found at 40 C.F.R. Part 61, Subpart J (for equipment leaks of benzene) and Subpart V (for equipment leaks); and 40 C.F.R. Part 63, Subpart F (for organic hazardous air pollutants from the synthetic organic chemical manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

38. The focus of the LDAR program is the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks as soon as they are identified.

39. Whenever any person has violated, or is in violation of, any requirement or

prohibition of any applicable New Source Performance Standard or any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes commencement of a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

### Benzene Waste NESHAP

40. The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

41. In March 1990, EPA promulgated national emission standards applicable to benzene-containing waste waters. Benzene is a listed HAP and a known carcinogen. The benzene waste regulations are set forth at 40 C.F.R. Part 61 Subparts FF, (National Emission Standard for Benzene Waste Operations). Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile. Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

42. Pursuant to the Benzene waste NESHAP, refineries are required to tabulate the total annual benzene ("TAB") content in their wastewater. If the TAB is over 10 Mg per year, the refinery is required to elect a control option for control of benzene.

43. Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable National Emission Standard for a Hazardous Air Pollutant, Section

113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes commencement of a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## CERCLA REQUIREMENTS

44. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a facility to immediately notify the National Response Center of a release of a hazardous substance from such facility in an amount equal to or greater than the amount determined pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

45. Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), provides that any person who violates the notice requirements of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), shall be liable to the United States for civil penalties.

## EPCRA REQUIREMENTS

46. Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), (b), requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC") and the Local Emergency Planning Committee ("LEPC") of certain specified releases of a hazardous or extremely hazardous substance.

47. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the

owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

48. Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), provides that any person who violates any requirement of Section 304 of EPCRA, 42 U.S.C. § 11004, shall be liable to the United States for civil penalties.

## FIRST CLAIM FOR RELIEF
### (CAA PSD/NSR Violations at FCCUs)

49. Paragraphs 1 though 48 are re-alleged and incorporated by reference as is fully set forth herein.

50. Holly owns and operates an FCCU regenerator at the Holly Refinery.

51. Upon information and belief, Holly has modified the FCCU regenerator at the Holly Refinery.

52. Upon information and belief, the modification to the FCCU regenerator was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) and the Utah PSD regulations, to existing major stationary sources that resulted in a significant net emissions increase of: NOx, $SO_2$, PM, and CO from the FCCU regenerator.

53. Since the initial construction or major modification of the FCCU regenerator, the Holly Refinery has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and the Utah SIP (and the Utah PSD regulations), by 1) failing to undergo PSD/NSR review for the FCCU, 2) failing to obtain permits, and 3) failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

54. Unless restrained by an Order of the Court, these violations of the Clean Air Act and

the implementing regulations will continue.

55. The violations set forth above subject defendant to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

**SECOND CLAIM FOR RELIEF**
**(NSPS Violations at FCCU)**

56. The allegations in Paragraphs 1 through 55 are hereby re-alleged and incorporated by reference as if fully set forth herein.

57. Holly is the "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of the FCCU regenerator at the Holly Refinery.

58. The FCCU regenerator at the Holly Refinery is a "fluid catalytic cracking unit catalyst regenerator" as defined in 40 C.F.R. § 60.101(n), and a "stationary source" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

59. The FCCU regenerator at the Holly Refinery is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

60. The FCCU regenerator at the Holly Refinery is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum

Refineries, 40 C.F.R. Part 60, Subpart J.

61. The FCCU regenerator at the Holly Refinery is subject to the emission limits set forth in 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b).

62. Upon information and belief, Holly has violated 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b), and thus Section 111 of the CAA, by not complying with the emissions standards set forth in those sections for the FCCU regenerator at the Holly Refinery.

63. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

64. The violations set forth above subject defendant to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

### THIRD CLAIM FOR RELIEF
### (NSPS Violations at SRP)

65. The allegations in Paragraphs 1 through 64 are hereby re-alleged and incorporated by reference as if fully set forth herein.

66. Holly is the "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of the SRP at the Holly Refinery.

67. The SRP is a "Claus sulfur recovery plant" as defined in 40 C.F.R. § 60.101(i), and a "stationary source" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C.

§§ 7411(a)(3) and 7602(z).

68.  The SRP has a capacity of more than 20 long tons of sulfur per day.

69.  The SRP is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and

60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C.

§ 7411(a)(2).

70.  The SRP is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60,

Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60,

Subpart J.

71.  The SRP is subject to the emission limit set forth in 40 C.F.R. § 60.104(a)(2)(i).

72.  Upon information and belief, Holly has emitted into the atmosphere gases containing

in excess of 1) 250 ppm by volume (dry basis) of $SO_2$ at zero percent excess air, or 2) 300 ppm

by volume of reduced sulfur compounds, from the SRP, in violation of 40 C.F.R. § 60.104(a)(2)

and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

73.  Unless restrained by an order of the Court, these violations of the CAA and the

implementing regulations will continue.

74.  The violations set forth above subject defendant to injunctive relief and civil

penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to

January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or

after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA,

Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for

each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L.

104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

## FOURTH CLAIM FOR RELIEF
### (CAA PSD/NSR Violations at Heaters and Boilers)

75. Paragraphs 1 through 74 are re-alleged and incorporated by reference as if fully set forth herein.

76. Holly owns and operates the Holly Refinery, which involves the physical, thermal, and chemical separation of crude oil into marketable petroleum products or asphalt. Holly owns and operates heaters and boilers at the Holly Refinery.

77. Based on information and belief, the United States alleges the following:

78. Holly's petroleum and asphalt refining processes results in emissions of significant quantities of criteria air pollutants, including NOx, CO, particulate matter ("PM"), $SO_2$, as well as VOCs and HAPs, including benzene. The primary sources of these emissions are process heaters and boilers.

79. The Holly Refinery is a "petroleum refinery" in accordance with Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources as a source with the potential to emit 100 tpy or more of any criteria air pollutant. The Holly Refinery is a major emitting facility with the potential to emit in excess of 100 tpy of NOx, PM, and $SO_2$ which are listed criteria air pollutants.

80. At all times relevant to this Complaint, the Holly Refinery is located in an area designated as "Class II" under Section 162(b) of the Act, 42 U.S.C. § 7472(b), and that has attained the National Ambient Air Quality Standards for Ozone, of which NOx is a precursor, $SO_2$, and PM under Section 107(d) of the Act, 42 U.S.C. § 7407(d).

81. At all times relevant to the Complaint, and on numerous occasions since the commencement of operations, Holly has failed to fully and accurately identify the emissions from

the Holly Refinery of one or more criteria pollutants.

82. During the time period relevant to this Complaint, upon information and belief, Holly has modified the heaters and boilers at the Holly Refinery.

83. Upon information and belief, each modification was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to existing major stationary sources that resulted in a significant net emissions increase of NOx and SO$_2$ from the heaters and boilers.

84. Since the initial construction or major modification of the heaters and boilers, Holly has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding state implementation plan, by failing to undergo PSD/NSR review for the heaters and boilers, by failing to obtain permits, and by failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

85. Unless restrained by an Order of the Court, these violations of the Clean Air Act and the implementing regulations will continue.

86. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## FIFTH CLAIM FOR RELIEF
### (CAA/NSPS Violations at Flaring Devices and Heaters and Boilers)

87. The allegations in Paragraphs 1 through 86 are hereby re-alleged and incorporated by reference as if fully set forth herein.

88. Holly is an "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at the Holly Refinery.

89. The flaring devices and heaters and boilers are "fuel gas combustion devices" as defined in 40 C.F.R. § 60.101(g), and "stationary sources" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

90. The flaring devices and heaters and boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

91. The flaring devices and heaters and boilers are subject to the emission limitation set forth in 40 C.F.R. § 60.104(a)(1).

92. Holly has burned in the flaring devices and heaters and boilers at the Holly Refinery fuel gas that contained hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

93. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

94. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief

and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

**SIXTH CLAIM FOR RELIEF**
**(CAA/NSPS: 40 C.F.R. § 60.11(d))**
**(Failing to Operate and Maintain the**
**the Heaters and Boilers and the Flaring Devices**
**in a Manner Consistent with Good Air Pollution Control Practice)**

95. The allegations in Paragraphs 1 through 94 are hereby re-alleged and incorporated by reference as if fully set forth herein.

96. Upon information and belief, Holly has emitted unpermitted quantities of NOx and $SO_2$ from its respective heaters and boilers at the Holly Refinery. These pollutants were emitted under circumstances that did not represent good air pollution control practices, in violation of 40 C.F.R. § 60.11(d).

97. Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

98. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment

Act of 1990, 28 U.S.C. § 2461, as amended.

## SEVENTH CLAIM FOR RELIEF
### (Leak Detection and Repair Requirements)

99. The allegations in Paragraphs 1 through 98 are re-alleged and incorporated by reference as if fully set forth herein.

100. The Holly Refinery is required under 40 C.F.R. Part 60, Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set forth at 40 C.F.R. §§ 60.483-1 to 60.483-2, for certain refinery equipment in light liquid and gas and/or vapor service, constructed or modified after January 4, 1983.

101. Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of valves in light liquid and gas and/or vapor service must initially comply with the leak detection monitoring and repair requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to monitor for such leaks.

102. Pursuant to 40 C.F.R. Part 61 Subpart J, Holly is required to comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain refinery equipment in light liquid and gas and/or vapor benzene service.

103. Upon information and belief, Holly has failed to accurately monitor the valves and other components in light liquid and gas and/or vapor service at the Holly Refinery as required by Standard Method 21, to report the valves and other components in light liquid and gas and/or vapor service that were leaking, and to repair all leaking VOC valves and other components in light liquid and gas and/or vapor service in a timely manner.

104. Upon information and belief, Holly's acts or omissions referred to in the

preceding Paragraphs constitute violations of 40 C.F.R. Part 60, Subparts GGG and VV; 40

C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC.

105. Unless restrained by an order of the Court, these violations of the Act and the

implementing regulations will continue.

106. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of

the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive

relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to

January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after

January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation

occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment

Act of 1990, 28 U.S.C. § 2461, as amended.

## EIGHTH CLAIM FOR RELIEF
### (Benzene Waste NESHAP)

107. The allegations in Paragraphs 1 through 106 are hereby re-alleged and

incorporated by reference as if fully set forth herein.

108. At all times relevant to this Complaint, Holly has asserted that the Holly Refinery

has a total annual benzene ("TAB") less than 10 megagrams per year, and is not subject to the

control requirements of 40 C.F.R. § 61.342.

109. Upon information and belief, the Holly Refinery has failed to comply with the

requirements of the Benzene Waste NESHAP that are applicable to facilities with a TAB of

less than 10 megagrams per year.

110. Unless restrained by an order of the Court, these violations of the Act and the

implementing regulations will continue.

111. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## NINTH CLAIM FOR RELIEF
### (CERCLA)

112. Paragraphs 1 through 111 are re-alleged and incorporated by reference as if fully set forth herein.

113. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a facility to immediately notify the National Response Center of a release of a hazardous substance from such facility in an amount equal to or greater than the amount determined pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

114 Holly is "in charge of" the Holly Refinery within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

115. Upon information and belief, Holly has failed to immediately notify the National Response Center of releases from the Holly Refinery of hazardous substances in an amount equal to or greater than the reportable quantity for those substances.

116. The acts or omissions referred to in the preceding paragraph constitute violations of Section 103(a) of CERCLA, 42 U.S.C. § 9603.

117. Pursuant to Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), Holly is liable for a civil penalty of up to: (1) $25,000 per day for each day each violation of Section 103(a) of CERCLA continues, and (2) up to $75,000 per day for each day that any second or subsequent violation continues.

## TENTH CLAIM FOR RELIEF
### (EPCRA)

118. Paragraphs 1 through 117 are re-alleged and incorporated by reference.

119. Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b), requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC" – State Authority) and the Local Emergency Planning Committee ("LEPC" – Local Authority) of certain specified releases of a hazardous or extremely hazardous substance.

120. Holly is the "owner and operator" of the Holly Refinery within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

121. The Holly Refinery is a "facility" at which "hazardous chemicals" are produced, used, or stored, within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

122. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

123. Upon information and belief, there have been "releases" of "hazardous substances" within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 1104(a), (b),

-25-

at the Holly Refinery. These hazardous substances included, without limitation, hydrogen sulfide, anhydrous ammonia, and sulfur dioxide, and were released in an amount greater than the reportable quantity. On each of these occasions, Holly has failed to immediately notify the SERC (State Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a); and to immediately notify the LEPC (Local Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a).

124. The acts or omissions referred to in the preceding paragraphs constitute violations of Section 304 of EPCRA, 42 U.S.C. § 11004.

125. Pursuant to Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), Holly is liable

for civil penalties in an amount not to exceed $25,000 per day for each day the violation continues and in an amount not to exceed $75,000 per day for each day that any second or subsequent violation continues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States and Utah, respectfully request that this Court:

1. Order Holly to immediately comply with the statutory and regulatory requirements cited in this Complaint, under the CAA, CERCLA and EPCRA;

2. Order Holly to take appropriate measures to mitigate the effects of its violations;

3. Assess civil penalties against Holly for up to the maximum amounts provided in the applicable statutes; and

4. Grant the United States and the State of Utah such other relief as this Court deems just and proper.

Respectfully submitted,

Date: _14 April 2008_

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: _4/17/08_

ROBERT D. BROOK
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-2738

Date: _4-7-08_

CHRISTIAN C. STEPHENS
Assistant Attorney General
Office of the Attorney General
State of Utah
160 East 300 South, 5th Floor
Salt Lake City, UT 84114-0873
Telephone: (801) 536-4137